IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **FILED UNDER SEAL** |
| v. | NO. |
| CHUEN FAT YIP,<br>　aka "YE CHUAN FA"　(01)<br>YIYUN FU,<br>　aka "EVELYN YIP"<br>　aka "MANDY WANG"　(02)<br>ZHENGZHE YIN,<br>　aka "MAX"　(03) | 3-18CR-478-L |

## INDICTMENT

The United States Grand Jury charges:

### Introduction

1. At all times relevant to the Indictment, the defendants, **Chuen Fat Yip**, **Yiyun Fu**, and **Zhengzhe Yin**, each of whom were citizens of the People's Republic of China and/or Hong Kong, were engaged in the business of manufacturing, selling, and distributing illegal controlled substances around the world, including in the Northern District of Texas.

2. These controlled substances included but were not limited to (1) 4-Anilino-N-penethylpiperidine commonly referred to as 4-ANPP, which is a precursor of fentanyl, and (2) anabolic steroids. Fentanyl is a synthetic opioid that is 80-100 times stronger than morphine and 20-50 times stronger than heroin. The United States Drug Enforcement Administration ("DEA") classifies both Fentanyl and 4-ANPP as Schedule

II drugs within the Controlled Substance Act of 1970. Anabolic steroids are synthetically produced variants of the naturally occurring male hormone testosterone. Anabolic steroids are classified as a Schedule III drug by the DEA. Fentanyl, 4-ANPP, and anabolic steroids are illegal to sell and distribute in the United States, without specific permission of the DEA.

3. **Yip** was considered one of, if not the largest, producer of anabolic steroids in the world. Records indicate that **Yip** and his codefendants were responsible for producing and distributing approximately $280 million worth of anabolic steroids across the globe over a five-year period. Customers in the United States were responsible for ordering the largest share (approximately $55 million in value) of these controlled substances from **Yip** and his codefendants.

4. **Yip** and his codefendants were capable of producing and distributing up to 1,000 kilograms of bulk steroid powder per month.

**Defendants and Entities**

5. **Yip** was the Owner, Chief Executive Officer, and Chairman of the Yuancheng ("YC") Group, which was based in Wuhan City, Hubei Province, in the People's Republic of China. The YC Group's facilities were primarily based in Wuhan and the city of Xiogan, also in the Hubei Province.

6. The YC Group owned and controlled several subsidiary businesses, including Shenzhen Shijingu Technology Co., Ltd., Wuhan Hezhong Bio-chemical Col, Ltd., and Yuancheng Logistics. In addition to Wuhan, the YC Group operated out of

Shanghai, Hong Kong, Macau, and the Guangdong province. Other known locations as advertised include: Xiogan, Dongguan, Shenzhen, and Zongshan.

7. **Fu** served as a Vice President, General Manager and Sales Manager for the YC Group, to include subsidiaries Wuhan Yuancheng Gongchuang Technology Co., Ltd. and Wuhan Hezhong Bio-Chemical Co., Ltd., and often communicated with English-speaking clients on behalf of the YC Group. **Fu** had previously attended the University of Delaware, through the Chinese Language Institute.

8. **Yin** served as a sales manager for the Wuhan Yuangcheng Gongchuang Technology Group, LLC, which was a subsidiary of the YC Group.

**Method of Operation**

9. The YC Group and its subsidiaries maintained large manufacturing facilities in the People's Republic of China and Hong Kong. The production facilities were extensive and capable of producing many chemical compounds, in both large and small quantities.

10. The YC Group and its subsidiaries advertised the sale of illegal controlled substances on a variety of websites, including, but not limited to: www.pharmade.com, www.rawsteroidpowder.com, www.sellsteroids.com, and www.steroidsmart.com. Customers could order directly from these websites.

11. The YC Group and its subsidiaries also attended trade shows where they advertised the sale of controlled substances, including at least one trade show in the United States in October 2015, where the organization was represented in person by **Yip, Fu, Yin,** and others. Representatives of these companies, including **Fu** and **Yin,** would

meet with potential and actual customers and negotiate larger transactions, including those of over 100 kilograms of substances. During these meetings, the codefendants acknowledged the illegality of their action, DEA efforts to stem the flow of such substances, and the steps customers needed to take to avoid detection. For large transactions and continuing customers, **Yip** and his codefendants sought additional meetings outside of the United States.

12. Following production of the substances, the YC Group would typically ship the contraband out of Shanghai or Hong Kong to locations all over the globe, including all fifty states and eighty-four other countries, as reflected in payment records from customers in these locations.

13. Shipments weighing less than 50 kilograms were shipped via commercial air carriers and package delivery companies, including the United States Postal Service, while shipments that weighed greater than 50 kilograms would be initially shipped via cargo vessel. The YC Group advised customers to not order more than two packages per month to any one address in order to avoid suspicion by law enforcement and border control authorities.

14. As an example of such shipments, in December 2017, a single customer ordered approximately 25 kilograms of 4-ANPP from **Yip's** companies. The parties agreed that this Fentanyl precursor would be shipped to a location in the United States. The customer intended for the Fentanyl precursor to then be smuggled into Mexico, where it would be combined with other chemicals to produce Fentanyl, smuggled into the United States, and further distributed to lower-level dealers and end-users.

15. The controlled substances shipments from **Yip's** companies were often disguised in packaging intended to resemble other products, such as food products.

16. The YC Group and its subsidiaries would receive payment from customers electronically via money remittance services and transfers to bank accounts controlled by **Yip** and **Fu**.

17. A significant amount of anabolic steroids produced by the defendants ended up in the Northern District of Texas, before it was seized by law enforcement officials.

<u>Count One</u>
Conspiracy to Possess with Intent to Distribute a Controlled Substance
(Violation of 21 U.S.C. § 846)

18. The Grand Jury realleges and incorporates by reference paragraphs 1 through 17 of the Indictment as though fully set forth herein.

19. Between in or about December 2017, and in or about September 2018, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Chuen Fat Yip**, **Yiyun Fu**, and **Zhengzhe Yin**, knowingly and intentionally combined, conspired, confederated and agreed with other persons known and unknown to the Grand Jury, to commit the following offense against the United States: to possess with intent to distribute and dispense a Schedule II controlled substance, to-wit: 4-ANPP, outside the usual course of professional medical practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1).

All in violation of 21 U.S.C. § 846.

<u>Count Two</u>
Conspiracy to Possess with Intent to Distribute a Controlled Substance
(Violation of 21 U.S.C. § 846)

20.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 17 of the Indictment as though fully set forth herein.

21.     Between in or about August 2014, and in or about September 2018, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Chuen Fat Yip**, **Yiyun Fu**, and **Zhengzhe Yin**, knowingly and intentionally combined, conspired, confederated and agreed with other persons known and unknown to the Grand Jury, to commit the following offense against the United States: to possess with intent to distribute and dispense a Schedule III controlled substance, to-wit: anabolic steroids, outside the usual course of professional medical practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1).

All in violation of 21 U.S.C. § 846.

<u>Count Three</u>
Conspiracy to Import a Controlled Substance
(Violation of 21 U.S.C. § 963)

22.	The Grand Jury realleges and incorporates by reference paragraphs 1 through 17 of the Indictment as though fully set forth herein.

23.	Between in or about August 2014, and in or about September 2018, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Chuen Fat Yip**, **Yiyun Fu**, and **Zhengzhe Yin**, did knowingly and intentionally conspire with each other and with other persons known and unknown to the Grand Jury, to import into the customs territory of the United States from a place outside the United States, namely, China, a controlled substance, namely, anabolic steroids, a Schedule III controlled substance, in violation of 21 U.S.C. §§ 952(a) and 960.

All in violation of 21 U.S.C. § 963.

<u>Count Four</u>
Manufacturing and Distributing a Controlled Substance Knowing
that the Controlled Substance will be Unlawfully Imported into the United States
(Violation of 21 U.S.C. § 959, 18 U.S.C. § 2)

24.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 17 of the Indictment as though fully set forth herein.

25.     Between in or about August 2014, and in or about September 2018, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Chuen Fat Yip**, **Yiyun Fu**, and **Zhengzhe Yin**, aided and abetted by each other, did knowingly and intentionally manufacture and distribute anabolic steroids, a Schedule III controlled substance, intending and knowing that such anabolic steroids would be unlawfully imported into the United States.

All in violation of 21 U.S.C. § 959 and 18 U.S.C. § 2.

<u>Count Five</u>
Manufacturing and Distributing a Controlled Substance Knowing
that the Controlled Substance will be Unlawfully Imported into the United States
(Violation of 21 U.S.C. § 959, 18 U.S.C. § 2)

26. The Grand Jury realleges and incorporates by reference paragraphs 1 through 17 of the Indictment as though fully set forth herein.

27. Between in or about August 2014, and in or about September 2018, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Chuen Fat Yip**, **Yiyun Fu**, and **Zhengzhe Yin**, aided and abetted by each other, did knowingly and intentionally manufacture and distribute 4-ANPP, a Schedule II controlled substance, intending and knowing that such 4-ANPP would be unlawfully imported into the United States.

All in violation of 21 U.S.C. § 959 and 18 U.S.C. § 2.

<u>Forfeiture Notice</u>
(21 U.S.C. § 853(a))

Upon conviction for any of Counts One through Five of this Indictment and pursuant to 21 U.S.C. §§ 853(a) and 970, the defendants, **Chuen Fat Yip**, **Yiyun Fu**, and **Zhengzhe Yin**, shall forfeit to the United States of America all property, real or personal, constituting, or derived from, the proceeds obtained, directly or indirectly, as a result of the respective offense; and any property, real or personal, used or intended to be used, in any manner or part, to commit or facilitate the commission of the respective offense.

A TRUE BILL

_____
FOREPERSON

ERIN NEALY COX
UNITED STATES ATTORNEY

_____
P.J. MEITL
Assistant United States Attorney
District of Columbia Bar No. 502391
Virginia Bar No. 73215
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8680
Facsimile: 214.659.8812
Email: philip.meitl@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

CHUEN FAT YIP, aka "YE CHUAN FA"   (01)

YIYUN FU, aka "EVELYN YIP", aka "MANDY WANG"   (02)

ZHENGZHE YIN, aka "MAX"   (03)

SEALED INDICTMENT

21 U.S.C. § 846
Conspiracy to Possess with Intent to Distribute a Controlled Substance
(Counts 1 and 2)

21 U.S.C. § 963, 18 U.S.C. § 2
Conspiracy to Import a Controlled Substance
(Count 3)

21 U.S.C. § 959, 18 U.S.C. § 2
Manufacturing and Distributing a Controlled Substance Knowing
that the Controlled Substance will Unlawfully Imported into the United States
(Count 4 and 5)

21 U.S.C. § 853(a)
Forfeiture Notice

5 Counts

A true bill rendered

<u>DALLAS</u>                                                                                         FOREPERSON

Filed in open court this _____ day of September, 2018.

-----

**Warrant to be Issued**

------------------------------------------------------------------------------------------------

_____
UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending